NELSON BARKER v. THE ESTATE OF LUCIUS BROWN.

*Promise to repay money loaned another—Consideration.*

Upon the facts as stated in the opinion it is held that there was a sufficient consideration for the promise of the defendant to be legally holden to claimant for the money loaned to the lodge of which defendant was a member, and to secure which, as also other money, the lodge had executed a mortgage to defendant's wife, at his request, and that the case should have been submitted to the jury.

Error to Ottawa. (Arnold, J.) Argued January 30, 1889. Decided February 15, 1889.

Appeal by estate from allowance of claim by commissioners in probate court. Claimant brings error. Reversed. The facts are stated in the opinion.

*Maher & Felker,* for appellant.

*George A. Farr,* for the estate.

[The points of counsel are stated in the opinion.— REPORTER.]

LONG, J. This is an appeal from commissioners on claims on the estate of Lucius Brown, deceased. The claim is for the balance remaining unpaid on a note as follows:

"$300.

"Six months after date, for value received, New Moon Lodge No. 284, I. O. O. F., promise to pay Nelson Barker or order three hundred dollars, with interest at ten per cent. per annum.

"*Jamestown Center, Aug.* 8, 1882.

"HENRY HOOPER,
"FRANCIS M. BYERS.
"L. B. BROWN,
"Trustees."

The cause came on to be heard in the Ottawa circuit court before a jury, who, under the direction of the court, returned a verdict in favor of the defendant estate. Judgment being so entered upon the verdict, the claimant brings error.

An issue was framed by the pleadings in the court below, the claimant filing a claim in which it is alleged that at the special instance and request of the deceased, on August 8, 1882, said claimant was induced to and did loan to the New Moon Lodge No. 284, I. O. O. F., the sum of $300, and took the note above mentioned; that the deceased, in order to induce said claimant to loan said money on said note, agreed and promised to pay said claimant said moneys and interest thereon, and said claimant, relying on said promise and agreement of said Brown, then and there turned over to said Brown said $300 in money; that prior thereto said New Moon Lodge and said Lucius Brown, deceased, had entered into an agreement as follows: That said lodge was then contemplating the erection of a building, and, not having sufficient funds for that purpose, it was agreed that said Brown should furnish the money, and when the building was completed said lodge was to give a mortgage on the building and grounds to the wife of said Brown, at his request and direction.

That in pursuance of said agreement, and in consideration that said Brown would pay and assume the indebtedness for the building of said lodge building, and of his promise and agreement to do so, said lodge, at the special instance and request of said Brown, executed and delivered to the wife of said Brown a mortgage on said building and lot for the amount of the indebtedness of said lodge for said building, and said Brown then and there assumed and agreed to pay the amount due said claimant, and said claimant then and there agreed to said arrangement, and

released said lodge from such obligation, and accepted said Brown therefor, and collected from said Brown, in pursuance of said arrangement, $100.    To this statement of claim in the nature of a special count is added the common counts in *assumpsit*.

The estate, by its counsel, pleaded a plea in the form of the general issue.    The cause was tried in the court below upon the issue so made.

It is contended upon the part of counsel for claimant that the evidence received on the trial had a legal tendency to prove both an original undertaking and liability on the part of the deceased for the payment to claimant of the amount of the note, and also an arrangement made between the lodge and Brown, by which for a valuable consideration he assumed and agreed with the lodge to pay the note.    It is contended further that there was an offer of evidence on the part of the claimant to show that this arrangement between the lodge and Brown was communicated to the claimant by a member of the lodge, and the claimant assented to the same, and agreed to look to Brown exclusively for his pay.

It appears that on May 10, 1879, the matter of building a hall was under discussion in the lodge.    The lodge had some money, but not sufficient for the purpose, when Brown proposed, if they would build the hall, he would furnish the balance of the money, and take a mortgage upon the property to his wife as security.    A motion prevailed to proceed to the erection of a building, and the building was erected.    It appears that Brown was unable to advance money as required, and he directed the building committee to borrow what they needed from others, promising to take care of the obligations afterwards.    The committee borrowed from several parties under this arrangement, one Soper loaning them $300. Mr. Brown paid up all these loans except the Soper loan

of $300. He then requested the lodge to make the mortgage to his wife for the money so paid out by him. This was objected to, unless the Soper matter was arranged.

On the trial, Mr. Wells was called as a witness for claimant, and testified substantially that some time about the last of July or first of August, 1882, Mr. Brown came to him with a note, and wanted him to sign it to hire some money to pay the Soper note, so he could get a mortgage of the lodge for the whole amount. He said he had got to get the money before he could get the mortgage; he had to release the debt against the lodge. He said he could get the money from Mr. Barker, but was hard up at the time, and wanted some help to get it, if he could, to extend the time, as he did not want to take a second mortgage on the property, and wanted to pay up the indebtedness, and have it all in one mortgage. He said he could get the money from Barker if he would become responsible for it. He said Mr. Barker did not want to take the note of the lodge, but he would take his, or would let him have the money if he would agree that he would pay it. Mr. Edgar Clark testified that he was present when Brown went to Barker to get the money on the lodge business, when Mr. Barker told him he did not know anything about the lodge business; he did not like to lend money that way; but if he would be responsible for the money, he would let him have it, or as much more as he wanted. Witness says that he could not say that Barker let him have the money, as he went away before the business was finished up.

It is not disputed that on August 8, 1882, Brown got the $300 from Barker, and gave the note before set out, and that this money was paid to Soper. On September 9, 1882, at the request of Brown, the lodge made and delivered to Mrs. Brown its mortgage of $786, and some

time after the lodge conveyed the whole property to Mrs. Brown in satisfaction of the mortgage. It also appears that Mr. Brown paid $100 on this note, and paid interest upon it from time to time.

Mr. Kellogg, one of the witnesses called by claimant, testifies that some time in 1887 Mr. Brown stated to him and to several other members of the lodge that he had received a deed of the property, but that in his judgment it was not worth as much as the incumbrance, and that if as Odd Fellows they would share the Barker note with him, the balance of it, he would take it as a great favor. He said to the brothers that he knew they would not be bound to pay the note; that he was the only one holden for the note; and that he did not ask them to help him because he thought they were under obligation to help, but simply to do it as brothers, if they chose to.

Mr. Peet testified that Mr. Brown told him that Mr. Barker refused to let the money go on the lodge note.

Brown also stated to a Mr. Garfield, in 1887, that the lodge could not get the money, and that he went to Mr. Barker and got it, and had to become personally responsible to Mr. Barker for its payment.

It is contended by counsel for the estate that the promise made by deceased to Mr. Barker at the time of the borrowing of the money was without consideration, and that under the circumstances here shown the deceased never became legally liable for the payment of the money to Barker; that Brown was never under any legal obligation to raise money for the lodge; and that any agreement made by him to advance or raise money for the lodge, or that Mrs. Brown would do so, was *nudum pactum;* that Brown received no money or property that could be applied upon the Barker debt, and that he was a mere agent of Mrs. Brown in taking the mortgage. It is also contended by counsel for the estate

that there is no evidence that the amount of the Barker claim was included in the mortgage given to Mrs. Brown, but counsel say, conceding that this is made to appear by the evidence in the case, yet the estate of Lucius B. Brown could not be made liable, for the reason that Brown was not a surety. He was under no legal obligation to Barker, and under no legal obligation to the lodge.

No witnesses were sworn on the part of the estate, but upon the case made by the claimant the court directed the verdict.

The court was in error in directing the verdict for the estate. It very clearly appears that the claimant loaned the money upon the assurance of the deceased that he was to be legally holden for its payment. He refused to make the loan upon any other understanding. He refused to look to the lodge for its payment, and it is evident from the testimony given and offered that the claimant relied upon the promises made by deceased that he would pay it. It does not appear that the claimant has ever made any claim that the lodge was indebted to him, but, on the contrary, it has always been treated as between the original parties as the debt of Brown. One hundred dollars of the principal and several installments of interest have been paid by Brown. It was during his life-time regarded by him as his debt, and not the debt of the lodge.

There was sufficient consideration for the promise. The action is between the original parties. Mr. Brown is deceased, and the claimant is, under the statute, prohibited from testifying to any fact equally within the knowledge of the deceased. But other witnesses are produced, from the testimony of whom the facts are gathered which show the arrangement and understanding between the three parties,—the claimant, the deceased, and the lodge.

The hall was to be built, the deceased to furnish the balance of money required to complete it. In consideration of this the lodge was to give a mortgage to the wife of deceased, to secure the moneys so advanced. Not being able to furnish the moneys as required, the lodge, at the request of deceased, loaned $300 of Mr. Soper, and gave the obligation of the lodge therefor. Deceased then demanded the mortgage to his wife under the arrangement made. This the lodge refused to make except on condition that deceased would take up the Soper obligation,—that is, release the lodge from any liability thereon. This Mr. Brown claimed to the lodge he had done, by borrowing the money of Mr. Barker, and paying the Soper claim. If the testimony of these witnesses is believed,—and we must take the facts as proven,—the members of the lodge believed the lodge was released from all claims except such as held by the deceased, and upon this understanding executed the mortgage to the wife of deceased.

We think the evidence tends to show that the amount of the Barker claim was included in this mortgage, and the lodge undoubtedly so understood it. Brown always treated the debt as his own, and made payments upon it as such. Mr. Barker also viewed it as Brown's debt, and refused to make it a claim against the lodge. The money was loaned to Brown, and with this agreement: that it should be his debt, and not the debt of the lodge. The real consideration moved to Mrs. Brown, but it was the agreement that it should. Brown got the money from Barker, released the lodge on the Soper obligation, and took the security on the lodge property, not only for what he himself had advanced, but also including in it the $300 got from Barker. No one would claim that if Brown had taken the mortgage directly to himself, under the facts here shown, but that Barker would have had

the right to recover the money from Brown, or that there was not a sufficient consideration for the promise to pay the money. It makes no different case that the mortgage was given to Mrs. Brown. Mr. Brown procured these acts to be done, and the money was loaned upon his promise. The taking of the mortgage under these circumstances was a sufficient consideration, though he took it in the name of another. This money was borrowed by him for his own benefit. Though he might not have been holden upon the Soper obligation, he acted upon the assumption that he was so liable, and obtained this money to discharge it. The fact that he turned over to claimant the obligation above set forth does not release him from liability upon his promise of payment, if such promise was made. It does, however, affect the question of interest. The claim now made is not upon the written obligation to pay, executed by the trustees of the lodge, but upon the verbal promise and undertaking of the deceased.

This written obligation, introduced in evidence by the claimant, may have much force, however, in favor of the position taken by counsel for the estate. It appears somewhat peculiar, if the theory of claimant is true, while protesting that he would not take the obligation of the lodge, or look to it for payment of the money, and that Brown was to become personally obligated, and did become personally liable for it, that at the time of making the loan he took this paper instead of the note of Brown, or his agreement to pay. These, however, are questions for the jury. We think the whole question should have been submitted to the jury, under proper instructions from the court. If claimant's theory is true, he undoubtedly had a right to have his claim allowed. If, on the other hand, he took the obligation put in evidence by him without any agreement on the part of

deceased to pay the money, and to become personally liable for it, then he could not recover his claim against the estate.

The judgment of the court below must be reversed, and a new trial ordered. Claimant will recover costs of this Court.

The other Justices concurred.